# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

BERNADETTE JOYCE MARTINEZ,

      *Plaintiff,*

v.                                                     Civ. No. 16-211 GJF

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,

      *Defendant.*

## ORDER DENYING PLAINTIFF'S MOTION TO REMAND

THIS MATTER is before the Court on Plaintiff's "Motion to Reverse or Remand Administrative Agency Decision" ("Motion") [ECF No. 15].   At the time of her disability application, Plaintiff was 30 years old.  She insisted she was disabled due to post-traumatic stress disorder ("PTSD") and depression arising from the loss of custody of her children during a time when she was incarcerated for a parole violation.   Having meticulously reviewed the entire record, considered the parties' arguments, and being otherwise fully advised, the Court concludes that substantial evidence supports the Commissioner's decision to deny benefits and that the proper legal standards were applied.   Therefore, and for the following reasons, the Court will **DENY** Plaintiff's Motion.

## I.   PROCEDURAL BACKGROUND

On July 14, 2014, Plaintiff Bernadette Martinez applied for disability insurance benefits, alleging that her disability began on December 31, 2013.[1]  Administrative R. ("AR") 208-09. Plaintiff's application was initially denied on November 5, 2014 [AR 155-61], and upon reconsideration on January 14, 2015.  AR 162-66.  Plaintiff then filed a written request for

---

[1] Plaintiff's surname on her application was Roybal, but she has since been married.  Administrative R. ("AR") 208-09.

hearing, and, on August 25, 2015, Administrative Law Judge ("ALJ") Myriam Fernandez Rice held a video hearing from Albuquerque, while Plaintiff appeared in Santa Fe.  Plaintiff testified at the hearing and was represented by counsel.  The ALJ also heard testimony from Pamela Bowman, an impartial vocational expert.  AR 29-64.

On November 4, 2015, the ALJ issued a decision, finding that Plaintiff had not been under a disability within the meaning of the Social Security Act since the date of her application. AR 14-24.  Plaintiff requested the ALJ's decision be reviewed by the Appeals Council, and, on February 16, 2016, the Appeals Council denied review.  AR 1-3.  Consequently, the ALJ's decision became the final decision of the Commissioner.

## II.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a court may review a final decision of the Commissioner only to determine whether the decision is supported by substantial evidence and whether the correct legal standards were applied.  *See* 42 U.S.C. § 405(g) (2015); *see also Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)).  If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief.  *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *see also Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004).  "The failure to apply the correct legal standards or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."  *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted).  "In reviewing the ALJ's decision, 'we neither reweigh the evidence nor substitute our judgment for that of the agency.'"  *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human*

*Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)); *see also Hamlin*, 365 F.3d at 1214 ("[B]ecause our review is based on the record taken as a whole, [the Court] will meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial …").

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quoting *Fowler v. Bowen*, 876 F.2d 1451, 1453 (10th Cir. 1989)). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118 (quoting *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988)). "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (citation omitted). "Rather, in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id.* at 1010. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## III.    SUMMARY OF ARGUMENTS

Plaintiff argues the ALJ's decision is both not supported by substantial evidence and is legally erroneous. Pl.'s Mot. to Reverse or Remand Administrative Agency Decision ("Pl.'s Mot"), ECF No. 15. Plaintiff claims the ALJ erred: (i) in evaluating medical opinion evidence, and (ii) in her consideration of testimony by a vocational expert. Mem. in Support of Pl.'s Mot. to Reverse or Remand Administrative Agency Decision ("Pl.'s Mem.") 18-26, ECF No. 16.

Defendant argues the ALJ's decision is supported by substantial evidence, as she reasonably evaluated the entire record, including medical source opinions and Plaintiff's statements. Def.'s Br. in Resp. to Pl.'s Mot. to Reverse and Remand the Agency's Administrative Decision ("Def.'s Resp."), ECF No. 18.

## IV.    APPLICABLE LAW AND SEQUENTIAL EVALUATION PROCESS

### A.  Legal Standard

For purposes of Social Security disability insurance benefits, the term "disability" means "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2015). To determine if an individual is disabled, the Social Security Administration utilizes a five-step sequential evaluation process, 20 C.F.R. § 404.1520 (2015), with each step being followed in order. *Id.* § 404.1520(4). If it is determined that the individual is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step. *Id.*

The claimant bears the burden of establishing a prima facie case of disability at steps one through four. *Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988).

> At step one, the claimant must show "that he is not presently engaged in substantial gainful activity;" at step two "that he has a medically severe impairment or combination of impairments;" at step three that the impairment is "equivalent to a listed impairment;" and, at step four, "that the impairment or combination of impairments prevents him from performing his past work."

*Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) (quoting *Williams*, 844 F.2d at 750-52). At step five, "the burden shifts to the Commissioner to show the claimant retains sufficient residual functional capacity (RFC) to perform work in the national economy, given his age,

education, and work experience." *Id.* (quoting *Williams*, 844 F.2d at 751).

## B. ALJ Decision

On November 4, 2015, the ALJ issued a decision denying Plaintiff's application for benefits. In doing so, the ALJ conducted the five-step sequential evaluation process. AR 14-24. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 31, 2013, the date of her alleged disability onset. At step two, the ALJ determined Plaintiff had the following severe impairments: posttraumatic stress disorder, depression, and a personality disorder.[2] The ALJ found these impairments to be severe because they "cause significant limitations in the [Plaintiff's] ability to perform basic work activities." AR 16.

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.[3] In reaching this conclusion, the ALJ reviewed Plaintiff's subjective statements regarding her condition and daily living, objective medical reports, and opinion evidence. The ALJ also evaluated Plaintiff's mental impairments under Listings 12.04, 12.06, and 12.08. AR 17-18.

Focusing solely on Plaintiff's mental impairments, the ALJ first found she experiences a mild restriction in her activities of daily living. The ALJ based this finding on Plaintiff's ability to perform personal care activities, including preparing meals, doing household chores, shopping, and driving. Next, the ALJ found that Plaintiff experiences moderate difficulties in social functioning. She premised this finding on Plaintiff's reports about social phobias as well

---

[2] At step two, the Administrative Law Judge ("ALJ") also identified Plaintiff's history with obesity, but found it to be a non-severe impairment. Plaintiff's body mass index was slightly above 30, indicating she met the medical standard of obesity. AR 16-17.

[3] The specific sections of the Code of Federal Regulations the ALJ referenced include: 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926 (2016). AR 17.

as the state agency psychological consultant's opinion.   Lastly, the ALJ found Plaintiff experiences moderate difficulties with regard to concentration, persistence, and pace, which she based on Plaintiff's testimony as well as the state agency psychological consultant's report.   AR 17-18.

After considering all of these factors, the ALJ determined that Plaintiff's mental impairments did not satisfy the paragraph B criteria for Listings 12.04 (affective disorders), 12.06 (anxiety and obsessive-compulsive disorders), or 12.08 (personality disorders) because her mental impairments had not caused any episodes of decompensation.[4]   Based on the evidence, the ALJ also determined that the paragraph C criteria were not satisfied.[5]   AR 17-18.

---

[4] Paragraph B in Listings 12.04, 12.06, and 12.08 describes impairment-related functional limitations that are incompatible with the ability to do any gainful activity. The functional limitations described below must be the result of the mental disorder described in the diagnostic description.   Paragraph B states:

> Resulting in at least two of the following:
> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration;

20 C.F.R. § Pt. 404, Subpt. P, App. 1, Pt. A2 (2016).

[5] Paragraph C in Listing 12.04 describes impairment-related functional limitations that are incompatible with the ability to do any gainful activity. The functional limitations described below must be the result of the mental disorder described in the diagnostic description.   Paragraph C states:

Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

> 1. Repeated episodes of decompensation, each of extended duration; or
> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
> 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

Paragraph C in Listing 12.06 describes impairment-related functional limitations that are incompatible with the ability to do any gainful activity. The functional limitations described below must be the result of the mental disorder described in the diagnostic description.   Paragraph C states:

Resulting in complete inability to function independently outside the area of one's home.

Before step four, the ALJ determined Plaintiff had the following residual functional capacity ("RFC"):

> [T]o perform a full range of work at all exertional levels but with the following nonexertional limitations: The [Plaintiff] is able to perform unskilled work where interpersonal contact is incidental, e.g. assembly work; tasks are no more complex than those learned and performed by rote, with few variables and little judgment; and supervision required is simple, direct, and concrete.  The [Plaintiff] is limited to only occasional interaction with the public and co-workers.

AR 18.  In support of this RFC assessment, the ALJ found that "[Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible . . . ."  AR 19.  Then, the ALJ detailed the many factors she considered.  The ALJ explained her reasoning for assigning very little weight to the opinions of Dr. Leslie Hayes, Plaintiff's treating physician, and Tracey Garcia, Plaintiff's therapist.  The ALJ also related her reasoning for assigning little weight to Michael Cummings, the state agency consultative psychologist.  AR 18-22.  Ultimately, the ALJ concluded that "[o]verall, the medical evidence fails to support the [Plaintiff's] allegation of disabling symptoms and limitations."  Despite her claims, "[Plaintiff] reported she had never been hospitalized for mental issues; [never] experienced any suicide attempts; and was not taking any medication for mental issues."  AR 21.

Plaintiff previously worked as a customer service representative and a special education teacher aide.  At step four, the ALJ determined she was unable to perform her past work, given her RFC.  AR 22-23.  At the fifth and final step, the ALJ noted that Plaintiff was born on October 15, 1983, and was therefore 30 years old as of the alleged disability onset date, which is considered to be a "younger individual" pursuant to 20 C.F.R. § 404.1563.  The ALJ further

---

20 C.F.R. § Pt. 404, Subpt. P, App. 1, Pt. A2.

noted that Plaintiff has at least a high school education, is able to communicate in English, and stated "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [Plaintiff] is 'not disabled,' whether or not [she] has transferable job skills."  AR 23.

After determining that Plaintiff could not return to her past work, the ALJ asked the vocational expert to consider whether there were jobs that existed in the national economy for an individual with Plaintiff's age, education, work experience, and residual functional capacity.  AR 23-24.  The vocational expert identified three jobs that such an individual would be capable of performing, including: industrial cleaner (DOT[6] 381.687-018), laborer/polisher (DOT 706.687-014), and laundry folder (DOT 361.587-010).  AR 23.  Subsequently, the ALJ concluded that Plaintiff is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy" and therefore she was not disabled under the meaning of the Act from December 31, 2013 through the date of the decision.  AR 24.

V.    ANALYSIS

A.  Medical Opinion Evidence

Plaintiff challenges the ALJ's treatment of medical opinions offered by Dr. Leslie Hayes, Michael Cummings, and Tracey Garcia.  The Court concludes the ALJ did not err in evaluating these opinions.

1.  Leslie Hayes, M.D.

The records reflect that Dr. Leslie Hayes served as Plaintiff's primary physician since September 2012, when Plaintiff first sought treatment following a sexual assault one month prior.  AR 384-87.  Between September 2012 and November 4, 2015, the date of the ALJ's decision, Plaintiff was treated by Dr. Hayes on approximately 26 occasions, for issues ranging

---

[6] DOT stands for "Dictionary of Occupational Titles."

from insomnia to supervision of a high-risk pregnancy.  AR 342-74, 378-87, 413-14, 417-29, 432-33.  In a letter dated May 3, 2014, Dr. Hayes wrote that Plaintiff suffered from PTSD and depression.  She also opined that Plaintiff would be expected to be absent from work approximately twenty (20) days per month. AR 317.  On November 25, 2014, Dr. Hayes wrote another letter about Plaintiff's high-risk pregnancy in which she stated it would be stressful for her to leave her home two times per week.  AR 402.

In a "Treating Source Opinion Re: Ability To Do Mental Work-Related Activity" dated August 11, 2015, Dr. Hayes assessed Plaintiff in 25 categories related to workplace skills and abilities.  Dr. Hayes assessed Plaintiff was "very good" in six categories, "limited but satisfactory" in nine categories, and "seriously limited" in ten categories.[7]  Dr. Hayes did not assess Plaintiff as "no useful ability to function," the most extreme assessment, in any category. In support of her assessments, Dr. Hayes provided only two sentences: "Has a hard time controlling her emotions, very unpredictable.  Although she is quite functional in many areas, when her depression & anxiety hit, she is unable to accomplish anything."  Dr. Hayes opined that Plaintiff would miss more than four days per month because of her condition. AR 309-10.

The ALJ assigned "very little weight" to Dr. Hayes's opinions, finding them inconsistent with the record as a whole, including Plaintiff's daily activities, self-reported activities, and medical treatment.  AR 22.  In support of this, the ALJ detailed the medical records from Dr. Hayes she reviewed and what she found to be notable.  Though Dr. Hayes opined Plaintiff's symptoms were so severe that she would miss work twenty (20) days per month due to her

---

[7] Per the form, "seriously limited" means the patient has noticeable difficulty from 11 to 20 percent of the workday or work week.  Dr. Hayes assessed Plaintiff was "seriously limited" in the following categories: (i) maintain regular attendance and be punctual within customary, usually strict tolerances, (ii) sustain an ordinary routine without special supervision, (iii) work in coordination with or proximity to others without being unduly distracted, (iv) complete a normal workday and workweek without interruptions from psychologically based symptoms, (v) accept instructions and respond appropriately to criticism from supervisors, (vi) respond appropriately to changes in a routine work setting, (vii) deal with normal work stress, (viii) deal with stress of semiskilled and skilled work, (ix) interact appropriately with the general public, and (x) use public transportation.  AR 409-10.

mental condition, the ALJ noted Dr. Hayes's treatment notes did not indicate Plaintiff had any mental abnormalities upon examinations.  AR 19-22.

The ALJ also described why Plaintiff's reports of her daily activities are inconsistent with someone who is disabled, as Dr. Hayes had recommended.  By citing to Plaintiff's reports of her own daily activities, the ALJ established that Plaintiff was independent in her self-care activities, as she could drive, prepare meals, do chores, and socialize with others, among other activities. Thus, a disability finding was unsupported.  AR 22.

Plaintiff argues the ALJ's analysis of Dr. Hayes's opinions violated the treating physician rule because she took bits of information from the record out of context to support her determination and did not properly weigh the opinions against the regulatory factors set forth in 20 C.F.R. §§ 404.1527 and 416.927.  Pl.'s Mem. 18-19.  Defendant contends the ALJ permissibly assigned Dr. Hayes's opinion "very little weight" and sufficiently explained her reasons for doing so.  Specifically responding to Plaintiff's arguments that the ALJ misapplied the treating physician rule, Defendant argues that an ALJ need not expressly consider each factor in deciding what weight to give a medical opinion.  Rather, an ALJ need only be sufficiently specific to give subsequent reviewers a clear understanding of the ALJ's decision-making process.  Def.'s Resp. 8-9.

### The Treating Physician Rule

"Under the regulations, the agency rulings, and our case law, an ALJ must 'give good reasons in [the] notice of determination or decision' for the weight assigned to a treating physician's opinion."  *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting 20 C.F.R. § 404.1527(d)(2)).  The notice of determination or decision "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating

source's medical opinion and the reasons for that weight." *Id.* (quoting SSR 96-2p, 1996 WL 374188, at *5).  When evaluating a treating source medical opinion as to the nature or severity of an individual's impairments, an ALJ should "[g]enerally . . . give more weight to opinions from [claimant's] treating sources."  20 C.F.R. § 404.1527(d)(2).  "The treating physician's opinion is given particular weight because of his unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."  *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (citing *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003)).

In reviewing the opinions of a treating physician, an ALJ must proceed sequentially. *Watkins*, 350 F.3d at 1300.  First, an ALJ must consider whether the medical opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques."  *Id.* (quoting SSR 96-2p, 1996 WL 374188, at *2).  If the ALJ finds that the medical opinion is well-supported by such techniques, he or she must then confirm it is consistent with other substantial evidence in the record.  *Id.*  "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight."  *Id.*

The Tenth Circuit has explained that resolving whether a medical opinion is entitled to controlling weight does *not* conclude the analysis:

> [A]djudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected.  Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 1527 and 416.927.

*Id*. (quoting SSR 96-2p, 1996 WL 374188, at *4).  The factors set forth in § 1527 and 416.927 are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 1301 (citing *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001)).  Not every factor is applicable in every case, nor should all six factors be seen as absolutely necessary. What is absolutely necessary, though, is that the ALJ give good reasons – reasons that are "sufficiently specific to [be] clear to any subsequent reviewers" – for whatever weight she ultimately assigns to the opinions.  *Langley*, 373 F.3d at 1119 (10th Cir. 2004).  Further, if an ALJ rejects the medical opinion in its entirety, he or she must provide "specific, legitimate reasons" for doing so.  *See Miller v. Chater*, 99 F.3d 972, 976 (10th Cir. 1996) (quoting *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987)).

The Court concludes that the ALJ did not violate the treating physician rule in evaluating Dr. Hayes's opinions.  It is clear from the ALJ's decision that she evaluated all of the medical opinion evidence, including Dr. Hayes's opinions, in accordance with the requirements of SSR 96-2p.  *See* AR 18.  Although the Court would have preferred the ALJ offer more explanation, her decision to assign those opinions "very little weight" was explained sufficiently enough to permit meaningful judicial review.

The law does not require that a treating physician's opinions be weighed against each of the *Watkins* factors.  Although the ALJ did not explicitly mention which factors she weighed Dr. Hayes's opinions against, her written decision reflected that she did consider at least the first four factors, namely: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the

kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; and (4) consistency between the opinion and the record as a whole. *See* AR 19-22.  The ALJ described in great detail the medical records from Dr. Hayes that she reviewed, including Plaintiff's presentation during numerous appointments, effects of prescription medication, and the treatment plan she was following at various stages of her medical care.  The ALJ further described Plaintiff's own testimony of her self-reported activities, which created a factual conflict with Dr. Hayes's opinions.  For example, Dr. Hayes opined that Plaintiff's symptoms render her unable to be out in public.  AR 20.  In contrast, Plaintiff reported being able to go out alone, shop for groceries, and socialize with others.  AR 17.  It is the province of the ALJ to resolve conflicting evidence like this.  Upon subsequent review, this Court must only determine whether the ALJ provided sufficiently clear reasons for the weight she assigned to Dr. Hayes's opinions.  The Court holds that the ALJ's explanation regarding Dr. Hayes's opinions is sufficiently precise to allow for meaningful review, and therefore not legally erroneous.

### 2.  Michael Cummings, Ph.D.

Michael Cummings is a psychologist who served as a consultative examiner at the request of the state agency.  He evaluated Plaintiff on October 16, 2014, for PTSD, severe depression, nausea, and body pain.  Moreover, he conducted a mental status evaluation and a social history with Plaintiff in preparation for his assessment.  He also reviewed records including four sections of the Disability Report – Adult Form SSA 3368.  AR 326-30.

Dr. Cummings's report relied heavily on Plaintiff's subjective statements about her condition.  For example, he noted that "[b]ased on her reported symptoms, she experiences panic."  AR 326-30.  Nevertheless, he did make independent findings based on his evaluation.

13

The critical portion of his findings is as follows:

> She is not limited in his [sic] ability to understand and remember very short and simple instructions.  She is mildly limited in understanding and remembering detailed or complex instructions.  She is mildly limited in her ability to carry out instructions or attend and concentrate.  She is moderately limited in her ability to work without supervision.  Her ability to interact with the public, coworkers, and supervisors is markedly limited.  Her ability to adapt to changes in the workplace, be aware of normal hazards and react appropriately is markedly limited.  Her ability to use public transportation or travel to unfamiliar places is moderately limited.

AR 330.

The ALJ discussed the findings from Dr. Cummings's consultative examination, including Plaintiff's subjective reports about her condition.  She thoroughly summarized the relevant parts of his opinion but ultimately found that "as his opinion was based on a one-time snapshot of the [Plaintiff's] functioning and clearly based more on the [Plaintiff's] subjective complaints, I have assigned little weight to his opinion."  AR 22.

Plaintiff takes issue with the ALJ assigning "little weight" to Dr. Cummings's consultative opinion.  She argues his findings are significant "because [they] indicate that Plaintiff is disabled."  Pl.'s Mot. 22.  Plaintiff further argues "[b]ecause ALJ improperly discounted Dr. Cummings's opinion, her decision is not supported by substantial evidence and [sic] erroneous."  *Id.* at 23.

Defendant argues to the contrary, stating "the ALJ permissibly assigned little weight to Dr. Cummings's opinion" that Plaintiff was markedly limited in certain areas.  Def.'s Resp. 10.  Furthermore, Defendant cites multiple statements from the ALJ in regards to Dr. Cummings, arguing the ALJ sufficiently explained why she assigned his opinion little weight.  *Id.*

The Secretary has broad discretion in ordering consultative examinations.  *See Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997) (citing *Diaz v. Sec'y of Health & Human Servs.*,

898 F.2d 774, 778 (10th Cir. 1990)).   "[W]here the medical evidence in the record is inconclusive, a consultative examination is often required for proper resolution of a disability claim." *Id.*

The governing regulations require that "[r]egardless of its source," the ALJ "will evaluate every medical opinion" received.   20 C.F.R. § 404.1527(c) (2016).   The regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." *Id.* § 404.1527(a)(2).   Social Security Ruling 96-6p provides guidance on how to consider opinions of consultative examiners, including opinions of psychological consultants.   SSR 96-6p, 1996 WL 374180.   Findings of fact made by a consultative examiner "must be treated as expert opinion evidence of nonexamining sources." *Id.*   ALJs and the Appeals Council may not ignore these opinions and must explain the weight given to these opinions.   *Id.*   The Ruling explains that because opinions of consultative examiners are weighed by stricter standards than those who are treating sources,

> the opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence including any evidence received at the administrative law judge and Appeals Council levels that was not before the State agency, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the State agency medical or psychological consultant or other program physician or psychologist.

*Id.*

This Court finds that the ALJ did not err in her treatment of Dr. Cummings's opinion. SSR 96-6p makes clear that an ALJ must explain the weight given to a consultative examiner's

opinions.  In this case, the ALJ did exactly that; she assigned little weight to Dr. Cummings's opinion and proceeded to articulate her reasons for doing so.  AR 22.

Whether the Court would have evaluated Dr. Cummings's opinion differently if it were reviewing the evidence *de novo* is not the question.  The Court is constrained to reviewing whether the ALJ erred as a matter of law in its treatment of Dr. Cummings's opinion.  It is not the proper role of this Court to substitute its judgment for that of the ALJ.  "In reviewing the ALJ's decision, 'we neither reweigh the evidence nor substitute our judgment for that of the agency.'"  *See Bowman*, 511 F.3d at 1272 (quoting *Casias*, 933 F.2d at 800).  It is the Court's role, however, only to determine if the ALJ properly explained her reasoning for assigning little weight to Dr. Cummings, a consultative examining psychologist.  The Court finds that the ALJ properly considered Dr. Cummings's opinion, assigned it the weight she felt it warranted, discounted it due to other evidence in the record, and satisfactorily explained her reasoning.

### 3.  Tracey Garcia, LISW

The records reflect that Tracey Garcia served as Plaintiff's counselor beginning in January 2014.  Between January 20, 2014, and April 20, 2015, Plaintiff was treated by Ms. Garcia a total of five times.  *See* AR 397-99, 400-01, 434-36.  On August 3, 2015, Ms. Garcia completed a "Treating Source Opinion Re: Ability to do Mental Work-Related Activity."  AR 411-12.  Ms. Garcia assessed Plaintiff in 25 categories related to workplace skills and abilities. Ms. Garcia assessed Plaintiff was "very good" in one category, "limited but satisfactory" in 17 categories, "seriously limited" in five categories, and "unable to meet competitive standards" in two categories.[8]  Ms. Garcia did not assess Plaintiff as having "no useful ability to function," the

---

[8] Per the form, "seriously limited" means the patient has noticeable difficulty from 11 to 20 percent of the workday or work week.  Ms. Garcia assessed Plaintiff was "seriously limited" in her ability to: (i) sustain an ordinary routine without special supervision, (ii) accept instructions and respond appropriately to criticism from supervisors, (iii)

most extreme assessment, in any category.  In support of her assessment, Ms. Garcia wrote, "[c]urrent emotional stressors could negatively effect [sic] work performance & attendance.  Depressed mood negatively effects [sic] daily functioning."  Ms. Garcia opined that Plaintiff would miss about three days per month because of her condition.  AR 411-12.

The ALJ reviewed Ms. Garcia's counseling notes dated January 20, 2014, thru April 20, 2015.  She noted that counseling was working well for Plaintiff and that Plaintiff was responsive to the therapy.  On multiple occasions, Plaintiff appeared highly motivated for positive change and was without suicidal ideations.  AR 21.  Relying on Ms. Garcia's notes and other medical evidence in the record, as well as Plaintiff's testimony, the ALJ assigned "very little weight" to Ms. Garcia's opinions.  AR 22.

Plaintiff argues that the ALJ committed error in evaluating Ms. Garcia's opinions.  She maintains that "although [Plaintiff] was working hard in therapy, she continued to experience tearfulness, significant anxiety, depressed mood, and mood-related withdrawal from people and activities."  Pl.'s Br. 24-25.  Defendant argues that the ALJ reasonably assigned very little weight to Ms. Garcia's opinions.  Furthermore, Defendant points out that the ALJ relied on Ms. Garcia's own counseling notes, which reveal improvement in Plaintiff's symptoms.  Def.'s Resp. 11.

Social Security Ruling ("Ruling") 06-03P was promulgated to clarify how the Social Security Administration would consider opinions from sources that are not "acceptable medical

respond appropriately to changes in a routine work setting, (iv) deal with normal work stress, and (v) deal with stress of semiskilled and skilled work.

"Unable to meet competitive standards" means the patient has noticeable difficulty from 21 to 40 percent of the workday or work week.  Ms. Garcia assessed Plaintiff was "unable to meet competitive standards" in the following categories: (i) maintain regular attendance and be punctual within customary, usually strict tolerances, and (ii) complete a normal workday and workweek without interruptions from psychologically based symptoms.  AR 411-12.

sources."[9]   The Ruling clarifies that the distinction between "acceptable medical sources" and other health care providers is important for three reasons: first, evidence from "acceptable medical sources" is needed to establish the existence of a medically determinable impairment; second, only "acceptable medical sources" can provide medical opinions; and third, only "acceptable medical sources" can be considered treating sources whose medical opinions may be entitled to controlling weight.   SSR 06-03P, 2006 WL 2329939 (August 9, 2006).   The Ruling identifies therapists as "other sources" whose evidence may be used "to show the severity of the individual's impairment(s) and how it affects the individual's ability to function."   *Id.* Information from "other sources," however, cannot establish the existence of an impairment.  *Id.*

The Ruling explains that the factors set forth in 20 C.F.R. § 404.1527(d) and § 416.927(d) can be applied to opinion evidence from "other sources."   *Id.*   These factors include:

> how long the source has known and how frequently the source has seen the individual; how consistent the opinion is with other evidence; the degree to which the source presents relevant evidence to support an opinion; how well the source explains the opinion; whether the source has a specialty or area of expertise related to the individual's impairment(s); and any other factors that tend to support or refute the opinion.

*Id.*   An adjudicator "generally should explain the weight given to opinions from these 'other sources'" or should otherwise discuss the evidence in a manner that permits a claimant or subsequent reviewer "to follow the adjudicator's reasoning."   *Id.*

The Court concludes that the ALJ did not err in her treatment of Ms. Garcia's opinions. The Tenth Circuit has held that all that is required from an ALJ are "good reasons" when discussing the weight afforded to an opinion from an "other source," including a therapist.   *See Nichols v. Astrue*, 341 F. App'x 450, 454 (citing *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th

---

[9] Under Social Security Administration regulations, "acceptable medical sources" are limited to licensed physicians (medical or osteopathic doctors), licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists.  *See* SSR 06-03P, 2006 WL 2329939 (August 9, 2006).

Cir. 2007)); *see also Endriss v. Astrue*, 506 F. App'x 772, 778 (10th Cir. 2012) (finding the ALJ did not err in evaluating an opinion from a physical therapist because there was sufficient information for a subsequent reviewer to follow the ALJ's reasoning).   An ALJ can apply the factors from § 404.1527(d) and § 416.927(d) to a therapist's opinions.   "It is not necessary, however, for the ALJ to address each factor expressly or at length."   *Nichols*, 341 F. App'x. at 453 (quoting SSR 06-03P).

In regards to the *Watkins* factors, the law does not require that a counselor's opinions be weighed against each factor.   Though the ALJ did not explicitly mention which factors she weighed Ms. Garcia's opinions against, her written decision reflected that she did consider the first four of those factors, namely: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole.   AR 19-22.   The ALJ described in great detail the counseling notes from Ms. Garcia that she reviewed, including Plaintiff's positive response to treatment and therapy. AR 21.   The ALJ further described Plaintiff's own testimony of her self-reported activities, which created a factual conflict with Ms. Garcia's opinions.   For example, in October 2014, Plaintiff reported to Dr. Cummings that she experienced debilitating symptoms related to panic and anxiety.   AR 19.   However, Ms. Garcia's notes reflect that, with therapy, Plaintiff was experiencing positive change.   AR 21.   Plaintiff argues that, despite her positive response to therapy, she was still exhibiting negative symptoms and, therefore, the ALJ erred in highlighting this fact purely because it supported a finding that Plaintiff was not disabled.   Pl.'s Br. 24-25.   To the contrary, the ALJ did not highlight this fact to illustrate that Plaintiff was entirely cured of

her symptoms – instead, this fact was merely illustrative of Plaintiff's improvement.

Again, it is solely the province of the ALJ to resolve conflicting evidence. Upon subsequent review, this Court must only determine whether the ALJ provided sufficiently clear reasons for the weight she assigned to Ms. Garcia's opinions. The Court holds that the ALJ's explanation in regards to Ms. Garcia's opinions was sufficient to allow meaningful review of her findings. The Court further concludes that the explanation was supported by substantial evidence and not otherwise legally erroneous.

### B. Vocational Expert Testimony

Finally, Plaintiff challenges the ALJ's treatment of the Vocational Expert's testimony, arguing that the ALJ ignored the VE's testimony about Plaintiff's limitations and how those affected her ability to maintain employment. Pl.'s Br. 25. Specifically, Plaintiff points out that the VE testified that a hypothetical person who would be late to work two times per month would not be able to maintain gainful employment. *Id.*; *see also* AR 61. Furthermore, Plaintiff points to the VE's testimony that a person who experiences breaking down into uncontrollable crying one time per week for approximately ten to fifteen minutes would be unable to maintain employment because that amount of time is too excessive to be away from one's tasks. *Id.* In support of this contention, Plaintiff cites *Campbell v. Bowen*, 822 F.2d 1518, 1523 n.6 (10th Cir. 1987), for the proposition that an ALJ may not ignore an unfavorable answer by a VE that is supported by substantial evidence.

For her part, Defendant contends that the "ALJ permissibly denied benefits at step five because Plaintiff could perform other work existing in significant numbers in the national economy." Def.'s Resp. 14. Additionally, Defendant argues that if there was any error concerning the ALJ's treatment of the VE's testimony, it was harmless.

20

For evidence that her mental condition would require her to miss too much work altogether and/or to fail to attend to her duties while actually at work, Plaintiff points to the opinions of Dr. Hayes, Ms. Garcia, and Dr. Cummings.  Pl.'s Br. 25.  Therein lies the problem for, as previously discussed at length, the ALJ permissibly assigned the opinions of Dr. Hayes and Ms. Garcia very little weight, and the opinions of Dr. Cummings little weight, respectively. Therefore, substantial evidence does not support the two specific portions of the VE's testimony that Plaintiff argues were impermissibly ignored.

Answers to hypothetical questions (posed to a VE or any other witness) are only as reliable as the assumptions embedded in the hypotheses themselves.  Here, it is clear to this Court that the ALJ was not persuaded by the opinions of Drs. Hayes and Cummings and Ms. Garcia concerning Plaintiff's predicted absenteeism or on-the-job inattentiveness.  The ALJ's decision to accord these opinions little weight was justified for the same reasons set forth earlier in this decision.  *See supra* Section VA at 8-20.  Consequently, the VE's answers to questions that assumed facts about absenteeism and inattentiveness the ALJ had implicitly rejected were immaterial because they were not supported by substantial evidence.

**VI.    CONCLUSION**

For these reasons, the Court holds that the ALJ's decision was supported by substantial evidence and the correct legal standards were applied.

**IT   IS   THEREFORE   ORDERED** that Plaintiff's Motion is **DENIED**, the Commissioner's final decision is **AFFIRMED**, and this action is **DISMISSED**.

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
*Presiding by Consent*

21